(70 App. Div. 560.)

### BLUMENTHAL et al. v. PRESCOTT et al.

(Supreme Court, Appellate Division, First Department.   April 11, 1902.)

1. LANDLORD AND TENANT—NEGLIGENCE IN REPAIRS—LIABILITY TO LESSEE.
    A landlord, who admits himself obligated to make repairs by undertaking to make them, is liable to the tenants for injury from the negligent doing of the work, though by a strict construction of the lease it was the lessee's duty to repair at the landlord's expense.

2. SAME—PRIVITY.
    There is a privity between a landlord and the person who repairs, so as to make the landlord liable to the lessee for negligence of such person in making the repairs, where the landlord himself leases the premises from C., and the landlord, to whom C. is under the same duty of making repairs that he is to his lessee, refers the lessee to L., agent for C. in the matter of repairs, and L. gets the person to do the work.

3. SAME—CONTRIBUTORY NEGLIGENCE OF LESSEE.
    A tenant is not guilty of contributory negligence because not protecting his merchandise, though knowing that when the landlord's contractor quit work on the roof Saturday night he had not covered it, as he should, to keep out any rain which might come, as it did on Sunday; the tenant having a right to assume that when the rain came the contractor would protect it.

Appeal from judgment on report of referee.

Action by Rudolph L. Blumenthal and others against Amos L. Prescott and another. From judgment for plaintiffs on report of referee, defendants appeal.   Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Herbert J. Hindes, for appellants.
John Bogart, for respondents.

VAN BRUNT, P. J.   This action was brought to recover from the defendants damages for injuries to goods, the property of the plaintiffs, claimed to have been caused by the negligence of the defendants, who were their landlords. In June, 1896, Harriett G. Le Conte, as trustee, etc., and Robert G. Le Conte, parties of the first part, executed a lease of the premises No. 11 Jay street, in the city of New York, to the defendants, composing the firm of J. L. Prescott & Co., parties of the second part.   The said lease, amongst other things, contained the following clauses:

"Said party of the second part further covenants that he will not assign this lease, nor make any alterations in said premises, without the written consent of said parties of the first part, under penalty of forfeiture and damages." "And it is further agreed between the parties to these presents that, in case the building or buildings erected on the premises hereby leased shall be partially damaged by fire, the same shall be repaired as speedily as possible, at the expense of the said parties of the first part." "And it is further understood and agreed that all repairs that may become necessary to or about said building, steam engines, and elevators during the term hereby granted (except repairs to the roof) shall be made and paid for by the said parties of the second part."

On the 9th day of December, 1898, the defendants leased said premises to the plaintiffs for the period of five years and four months, commencing January 1, 1899; the said lease also contained the provisions above quoted. On the 3d day of August, 1900, a fire took place on the premises, which was limited to the rear of the building, burning a large hole in the roof. From about August 3d up to Friday, August 10th, the fire department had charge of that portion of the demised premises which was injured by the fire, and kept the roof covered. Upon the last-mentioned day one Schorer, a contractor, and his men, undertook to make repairs in the roof. Before such repairs were completed, and while the premises remained open, rainstorms occurred on Sunday and Monday, August 12th and 13th, causing damage to the plaintiffs' goods. The claim is that Schorer and his workmen left the roof on Saturday, August 11th, in an unfinished condition, and without taking any proper precaution to protect it from rain; and it is to recover for the alleged damage to the goods of the plaintiffs that this action is brought. It is claimed upon the part of the defendants that no liability attached to them for the damage sustained by the plaintiffs because: First, the defendants were not absolutely bound to repair; second, the plaintiffs failed to give notice to the defendants of the damage to the roof and to repair; third, it was the duty of the plaintiffs to repair at the defendants' expense, or move out of the premises if the defendants failed to repair agreeably to their covenant; fourth, there was no privity between the defendants and the person who made the repairs; fifth, the repairs were not negligently done; and, sixth, the plaintiffs were guilty of contributory negligence.

The referee has found—and we think that there was evidence sufficient to justify the finding—that the course of dealing between the defendants and the plaintiffs had been that, when occasion arose for repairs which the landlords were liable to make, the plaintiffs had been referred to E. H. Ludlow & Co., who were the agents of the Le Conte estate, and that such repairs were then made through the agency of Ludlow & Co.; and that the communications had by the plaintiffs with the defendants were principally through an employé of the defendants of the name of Miller, who, the referee found, represented the defendants in their absence. It further appears that at the time of the occurrences in question neither of the defendants was in the city of New York, or the state of New York; one of them being in the Yellowstone Park, and the other in the state of Maine. Under these circumstances it was, of course, impossible for the plaintiffs to give notice of the occurrence of the fire to the defendants

personally.   There is evidence that personal notice was given to Miller of the fire.   It is true that he denies it; but that he was aware of the happening of the fire is apparent from the fact of his having received a letter addressed to J. L. Prescott & Co. from E. H. Ludlow & Co., which he had opened and read, and then forwarded to the plaintiffs.   It further appeared that Ludlow & Co., in pursuance of the practice which had been suggested by the defendants, were notified of the fire, and in accordance with the obligations of the lease they undertook to make the repairs.   It seems to us, therefore, that the first objection is clearly not well taken, because the plaintiffs did everything which it was incumbent upon them to do in order to give the defendants notice of the fire, so that the proper repairs might be made.   Miller, who was the representative of the defendants,— certainly in their absence,—had notice of the fire; and Ludlow & Co., the parties to whom the plaintiffs were referred whenever there was a question of repairs to be done under the lease by the landlords, also had notice; and, further, Ludlow & Co. undertook to perform the duty of making these repairs, admitting themselves obligated so to do by the terms of the lease to the defendants.   Under these circumstances it is apparent that the defendants had constituted Ludlow & Co. their representatives for the purpose of carrying out the obligations of their lease to the plaintiffs; and, they having undertaken to do these repairs in this manner, it is entirely immaterial, so far as this case is concerned, whether, upon a strict interpretation of the covenants in the lease, it was the duty of the plaintiffs to repair at the defendants' expense, or whether it was the duty of the defendants to make the repairs in the first instance.   This also makes immaterial the objection that there was no privity between the defendants and the person who made the repairs.   The defendants had created such privity when they referred the plaintiffs to Ludlow & Co. as agents of the Le Conte estate in reference to the subject of repairs to be made under the clause.   It is, of course, readily to be understood why this reference was made.   While the defendants were bound to make certain repairs for the plaintiffs, the Le Conte estate was bound to make the repairs for the defendants; and thus, in order to avoid the necessity of their communicating with Ludlow & Co., the defendants instructed the plaintiffs to do so directly; and, the plaintiffs having acted upon this instruction, it is too late now for the defendants to claim that there was no privity between themselves and the contractor employed by the Le Conte estate to make the repairs.   They handed over this business to the Le Conte estate, and the estate consented, and in so doing, so far as the plaintiffs were concerned, they were acting as the agents of the defendants, and the defendants were liable for whatever the estate did in the carrying out of the defendants' contract with the plaintiffs.   Of course, this whole position depends upon the fact that this reference was made, and that the defendants had held out Miller as being authorized to act for them in respect to this matter.   We do not see how the referee could come to any other conclusion than that Miller was the representative of the defendants, as we have already said, certainly during their absence from the state.   This being the

case, the question of an independent contractor in no way enters into the discussion. The defendants, if not bound in the first instance, assumed, by their representatives, the Le Conte estate, to make the repairs. If they did so, they were bound to make them with diligence and care. They could choose their own method of doing the work. They could do it themselves, or they could make a contract with others to do it. But, whichever method they adopted, the doing of the work was their act. They were simply fulfilling their contractual obligations to the plaintiffs, who had no interest in the manner of its being done, or by whom. The case is absolutely different from one in which a claim is made by a stranger for damage caused by negligence in the performance of work.

It is also claimed that the plaintiffs were guilty of contributory negligence, in that, knowing that their merchandise was exposed to damage or injury from storms, they left it to this hazard; and therefore they cannot recover from any one, not even the owner of the property who made the repairs; and our attention is called to various cases where the landlord was under a covenant to repair, and it was held that where, the landlord having failed to attempt to comply with his covenant to repair, the tenant leaves his goods subject to the action of the weather, he cannot recover for the damages sustained in consequence of a storm. But those cases have no application to the one at bar. Here the landlords, representing the defendants, were in the act of performing their covenants, and were making the repairs, and it was in consequence of the negligent manner in which the work was conducted that the injury occurred. It is true that the proof shows that the plaintiffs knew that this roof was not secured as it should have been when the contractor quitted work on the Saturday preceding the Sunday and Monday when it rained, but the plaintiffs had no reason to suppose that when the storm came up the contractor would not take means to protect the roof, which he knew he had left open. It is entirely different from a case where the tenant knew that his landlord was not going to perform his covenant, and he deliberately allowed his goods to be destroyed. The whole difficulty in the case was that the carpenters did not get their work done. The evidence shows that the man who was to put on the tar roof and make the roof water-tight was there ready to do the work, and would have completed it on the Saturday, had the carpenters had their part of the work in condition.

It is further claimed on the part of the defendants that the repairs were not negligently done. The point needs no discussion. The circumstances attending the making of the repairs speak loudly enough to answer this proposition.

The claim made by the defendants that the rule of damages adopted by the referee was an improper one, and that he should have allowed only the difference between the rental value of the premises as they were and their rental value as they would have been if repaired in accordance with the landlord's covenant, is clearly untenable. The plaintiffs were not bound to abandon the lease because of the damage to the building which occurred. It was susceptible of quick and easy reparation. It was the duty of the defendants to make the repairs in a manner which would protect the plaintiff from loss; and, if that

work was so negligently carried out that the plaintiffs' goods were damaged by water, there is no reason why they should not be allowed to recover the damages they have sustained.

The judgment must be affirmed, with costs.   All concur.