PETER SCHUMACHER, Appellant, v. KANSAS CITY BREWERIES COMPANY.

Division One, December 24, 1912.

1. NEGLIGENCE: Safe Place: In Connection with Work. It is not only the duty of the master to provide a reasonably safe place in which his servant is to work, but a reasonably safe place on the premises to which he properly resorts in connection with his work.

2. ————: Contributory: Vouching for Own Witnesses. The plaintiff is not concluded by the testimony of each one of the several witnesses introduced by him. His *prima facie* case of negligence is not destroyed by the testimony of one witness which tends to show him guilty of contributory negligence, if that testimony is contradicted by other witnesses whose testimony tends to show he was not negligent. It is for the jury to say which witnesses they will believe, although all of them are introduced by plaintiff.

3. ———: ———: Throwing Lumber Into Passageway. Plaintiff was employed in the stock building of a brewery; between it and the engine room was a passageway, through which the men went to and from their work. The second floor of the engine room was being replaced by concrete, and the timbers as taken out were thrown from a window into the passageway, sixteen feet below. To notify the men throwing out the lumber when an employee was in the passageway, a watchman was placed at its entrance and the rule was that when the men were ready to throw out lumber they called out, "Look out below," and if no one was in the passageway the watchman replied, "All right." · The work of throwing out the lumber had been going on for eleven days, at intervals of hours and days. Plaintiff, on the way to his work, entered the passageway, and saw and passed three or four men standing in the passageway about fifteen feet from the window. He testified that he did not know one of them was the watchman, that they gave him no warning, and that just as he was under the window something struck him which rendered him unconscious. *Held*, that this testimony made out a *prima facie* case; and was not destroyed by the testimony of the watchman, introduced by him, that when the timber which struck plaintiff was shoved out of the window six or eight feet the men in the building hallooed, "Look out below," and he looked around to see if any one was coming, and seeing no one called back, "All right," and turned his head to watch the timbers so as to keep out of their way, and that he did not see plaintiff until after he was struck; nor, by the fact that the same witness testified that at the time there was a pile of lumber three or four feet high lying in the passageway beneath the window, scattered confusedly around, that had lately been thrown out, and it was customary as the timbers were thrown out to stack them up in an orderly way along the building wall, and that plaintiff did not look up at the window as he passed under it—the plaintiff having testified that there were only three or four pieces of lumber and they were laid in regular order against the wall.

4. ———: Fellow-Servant. An employee in the cookroom of a large brewery, with many departments, having a foreman in each and one general superintendent, is not a fellow-servant of the carpenters and workmen in another part of the building engaged in replacing the wooden floor with a concrete one.

5. ———: Pleading: Instruction: Omitting Necessary Element. An element of defendant's negligence cannot properly be omitted from the instruction unless it could also have been properly omitted from the petition.

6. ———: **Master and Servant: Assumption of Duty.** If the master was under no obligation to furnish a watchman to warn his servants of danger, the mere fact that he voluntarily assumed that duty would not of itself render him liable for injury due to the negligent performance by the watchman of the work imposed upon him.

7. ———: **Pleading: Two Acts: One Omitted from Instruction: Variance.** Where the petition charged that the master was negligent in failing to exercise ordinary care in throwing timbers from a window into a passageway through which his servants customarily passed to and from their work, and in not warning plaintiff that a timber was about to be thrown out as he passed the window, an instruction embracing the first charge, but containing no words requiring the jury to find as a fact that it was the duty of the master to furnish a watchman to warn him, but instead thereof permits a verdict for plaintiff if the jury find that the master customarily furnished a watchman and thereby misled and lulled him into a feeling of security, and his watchman, though present, failed to warn him, is erroneous; and while the general charge of negligence that the timbers were negligently thrown from the window would be sufficient to support a judgment after verdict, even under such an instruction, if there was substantial evidence to support it, yet where there is no evidence that the timbers were negligently thrown out, and the material negligence was the failure of the watchman to warn him that the timber was about to be thrown out, a verdict based on an instruction which does not require the jury to find that it was the master's duty to furnish a watchman, cannot stand. The instruction so broadens the issues as to constitute a variance.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover*, Judge.

AFFIRMED.

*Block & Block, A. F. Smith, Boyle & Howell*, and *Guthrie, Gamble & Street* for appellant.

(1) It is the duty of the master to maintain the place where employees may properly resort in connection with their employment, in a reasonably safe condition. This is a positive duty of the master which cannot be delegated so as to relieve the master. Other servants performing this duty are not fellow-servants.

Railroad v. Wise, 106 Ill. App. 174, 206 Ill. 453; 26 Cyc. 1087; King v. Railroad, 143 Mo. App. 289; Bailey v. Dry Goods Co., 149 Mo. App. 656; Strobel v. Mfg. Co., 148 Mo. App. 22; Van Verth v. Candy Co., 155 Mo. App. 304; Koerner v. Car Co., 209 Mo. 157; Stone Co. v. Mooney, 60 N. J. L. 323; Hjelm v. Granite Co., 94 Minn. 173; Railroad v. Holcomb, 9 Ind. App. 198; Sroufe v. Moran, 28 Wash. 381; D'Agostino v. Railroad, 72 N. J. L. 358. (2) The men specially engaged in reconstruction work, something not a part of the ordinary work of the brewery, under a separate foreman employing and controlling them, were in a different department of employment among the numerous distinct departments in different buildings in this particular one of several plants of the master, and not within the fellow-servant rule. Koerner v. Car Co., 209 Mo. 153; Tabor v. Railroad, 210 Mo. 397; McMurray v. Railroad, 225 Mo. 305; Music v. Dold, 58 Mo. App. 334; Shore v. Brewing Co., 111 Mo. App. 288; Haas v. Railroad, 111 Mo. App. 709; Tabler v. Railroad, 93 Mo. 79; Sullivan v. Railroad, 97 Mo. 119; Parker v. Railroad, 109 Mo. 362; Dixon v. Railroad, 109 Mo. 413; Relyea v. Railroad, 112 Mo. 93; Schlereth v. Railroad, 115 Mo. 87; Swadley v. Railroad, 118 Mo. 268; Church v. Railroad, 119 Mo. 203; Kelly v. Railroad, 141 Mo. App. 449; Jones v. Railroad, 178 Mo. 275; Lanning v. Railroad, 196 Mo. 661. (3) In every case in which different men might reasonably differ as to what care would be exercised by an ordinarily prudent man under all the circumstances, the question of contributory negligence is solely for the jury. (4) Where a system of signals giving warning of intermittent dangers is being employed, and such system is known to the party charged with contributory negligence, he cannot be said, as a matter of law, to be guilty of contributory negligence for failure to keep watch against the specific danger. It is for the jury to say, under all the circumstances, how far an ordinarily prudent

Schumacher v. Breweries Co.

man would rely upon the giving of the customary warning. Beach on Contributory Negligence (2 Ed.), sec. 190; Cooley on Torts, p. 802; Shearman & Redfield on Negligence (5 Ed.), sec. 466, note 8; Wilkins v. Railroad, 101 Mo. 105; Gurley v. Railroad, 104 Mo. 211; Kenney v. Railroad, 105 Mo. 286; Crumpley v. Railroad, 111 Mo. 158; Francis v. Railroad, 127 Mo. 658; Hutchinson v. Railroad, 161 Mo. 254; Riska v. Depot Co., 180 Mo. 191; Montgomery v. Railroad, 181 Mo. 500; Sites v. Knott, 197 Mo. 717; Johnson v. Railroad, 203 Mo. 400; Strauchon v. Railroad, 232 Mo. 600; Burbridge v. Cable Co., 36 Mo. App. 670; Cox v. Granite Co., 39 Mo. App. 424; O'Keefe v. Railroad, 108 Mo. App. 184; Rissler v. Transit Co., 113 Mo. App. 124; Peterson v. Transit Co., 114 Mo. App. 378; Railroad v. Amos, 54 Ark. 164; Dolph v. Railroad, 74 Conn. 538; Ranford v. Railroad, 126 Ga. 452; Railroad v. Hutchinson, 120 Ill. 587; Railroad v. Blaul, 175 Ill. 183; Railroad v. Yundt, 78 Ind. 373; Railroad v. Stegemeier, 108 Ind. 309; Railroad v. Brandt, 172 Ind. 647; Buchanan v. Railroad, 75 Iowa, 393; Railroad v. Holland, 60 Kan. 213; Sights v. Railroad, 117 Ky. 442; Railroad v. Ruoff, 141 Ky. 623; Cooper v. Railroad, 81 Me. 267; Railroad v. Stumpf, 97 Md. 78; Bailey v. Railroad, 125 Mass. 62; Merrigan v. Railroad, 154 Mass. 189; Lang v. Terry, 163 Mass. 138; Luke v. Mining Co., 71 Mich. 364; Engle v. Smith, 82 Mich. 1; Tobias v. Railroad, 110 Mich. 440; Anderson v. Mill Co., 42 Minn. 424; Stegner v. Railroad, 94 Minn. 167; Hoelgin v. Railroad, 143 N. C. 96; Harmer v. Apartment Co., 68 N. J. L. 332; D'Agostino v. Railroad, 72 N. J. L. 358; Glushing v. Receiver, 96 N. Y. 678; Palmer v. Railroad, 112 N. Y. 234; Wallace v. Railroad, 138 N. Y. 306; Railroad v. Schneider, 45 Ohio St. 678; Roberts v. Railroad, 177 Pa. St. 183; Wilson v. Railroad, 18 R. I. 193; Railroad v. Ray, 25 Tex. Civ. App.

367; Kimball v. Friend, 95 Va. 138; Jones v. Mill Co., 65 Wis. 315.

*Cowherd, Ingraham, Durham & Morse* for respondent.

(1) The trial court was right in holding that plaintiff was guilty of such contributory negligence as to bar a recovery. (a) Plaintiff's attention was not engrossed in any work at the time of the accident. Therefore, it was his duty to use his sight, hearing and forethought for his own protection. This he admits he did not do. Wheat v. St. Louis, 179 Mo. 572; Montgomery v. Railroad, 189 Mo. 508; McNamara v. Railroad, 126 Mo. App. 152; Evans v. Railroad, 178 Mo. 517; Holland v. Railroad, 18 Fed. 243; Mayliani v. Railroad Co., 108 Minn. 48; Woodson v. Railroad, 224 Mo. 685; Clancy v. Railroad, 192 Mo. 655; Schmeizer v. Furniture Co., 134 Mo. App. 493; Glover v. Bolt & Nut Co., 153 Mo. 327; Blockschmidt v. Railroad, 205 Mo. 435; Newton v. Railroad, 152 Mo. App. 167; Sissel v. Railroad, 214 Mo. 515; Degonia v. Railroad, 224 Mo. 364; Nivert v. Railroad, 232 Md. 644; Cahill v. Railroad, 205 Mo. 393. (b) Plaintiff had no right to rely blindly upon a watchman to warn and not look for a danger which he knew existed. Absence of any warning does not absolve plaintiff from the exercise of care. Mockowick v. Railroad, 196 Mo. 550; Threlkeld v. Wabash, 68 Mo. App. 127; Schaub v. Railroad, 133 Mo. App. 446; Van Dyke v. Railroad, 230 Mo. 259; Davis v. Railroad, 159 Mo. 1; Kelly v. Railroad, 88 Mo. 534; Kleiber v. Railroad, 107 Mo. 261; 3 Elliott on Railroads, p. 1754, sec. 1157. (c) The danger was obvious to plaintiff, had he looked. It is not negligence, therefore, for defendant not to warn. Smith v. Box Co., 193 Mo. 715; Nugent v. Milling Co., 131 Mo. 241; Hirsch v. Bread Co., 150 Mo. App. 162; Pohlmane v. Car Co., 123 Mo. App. 219; Stigman v. Ger-

ber, 146 Mo. App. 101. (d) Plaintiff could have gone to his work through three other entrances without any danger to himself. It was his duty to do this. Cohn v. Kansas City, 108 Mo. 703; Woodson v. Railroad, 224 Mo. 701. (2) Plaintiff's injuries were due to the acts of his fellow-servant, and, therefore, he cannot recover. Ryan v. McCully, 123 Mo. 635; McCarty v. Hotel Co., 144 Mo. 397; Oher v. Construction Co., 158 Mo. App. 213; Sheehan v. Prosser, 55 Mo. App. 569; Jackson v. Mining Co., 106 Mo. App. 441; Card v. Eddy, 129 Mo. 510; Schmeizer v. Furniture Co., 134 Mo. App. 493; Livengood v. Mining Co., 179 Mo. 229. (3) The motion for new trial was properly sustained because of error in plaintiff's instruction 1. Said instruction does not conform to the cause of action pleaded. Hufft v. Railroad, 222 Mo. 302; Degonia v. Railroad, 224 Mo. 590; Black v. Railroad, 217 Mo. 672. The instruction as a matter of law assumes that a failure to warn plaintiff was negligence. It was for the jury to say whether under the circumstances it was the duty of defendant to warn and whether a watchman was necessary. Welsch v. Railroad, 72 Mo. 451; Becke v. Railroad, 102 Mo. 551; Railroad v. Ins. Co., 144 U. S. 421. It assumes as 'a matter of law that a warning by a watchman was necessary and that any other method would be insufficient—such as the danger sign or the cry of the men throwing the timber.

WOODSON, J.—The plaintiff instituted this suit in the circuit court of Jackson county, against the defendant, to recover twenty-five thousand dollars damages for personal injuries received February 14, 1908, through the alleged negligence of the defendant.

The petition was in the usual form; and the answer consisted of a general denial and a plea of contributory negligence, assumption of risk, and that whatever injuries the plaintiff sustained were the re-

sult of the negligence of a fellow-servant. The reply was a general denial.

A trial was had before the court and jury, which resulted in a verdict for the plaintiff for the sum of twelve thousand and five hundred dollars.

In due time, a motion for a new trial was filed, which was by the court sustained, for the reasons assigned of record, "that plaintiff was guilty of such contributory negligence that he ought not to recover; that the court erred in overruling defendant's demurrer at the close of plaintiff's case, and giving plaintiff's general instruction number one, and for the reason that plaintiff was guilty of such contributory negligence that he ought not to recover." From this order sustaining the motion for a new trial the plaintiff duly appealed the cause to this court.

The defendant introduced no evidence; and the plaintiff's evidence, outside of the physician's, consisted of his own testimony and that of four or five witnesses, employees of defendant.

The facts of the case are but few, and are practically undisputed; but there is a wide variance between counsel as to the legal conclusions which should be drawn therefrom.

The appellant was an employee of respondent, and worked in what is known as the "cook house" or the "brew house;" that is, in the room where the kettles in which the beer is cooked are situated, and his duty was to look after the kettles, keep them clean, mix the materials which were cooked therein and attend them while the cooking was going on, etc.

The entire plant of appellant covered nine acres of ground, and consisted of many separate departments; among others were the bottling shop and racking room, where bottles and kegs were stored, washed and filled with beer; the elevator building, where the grain was received and stored; the engine room, the refrigerating plant, the stock houses and stock cel-

lars, where the beer is stored; barns for horses and wagons; and office buildings, and many others, according to the plat introduced in evidence. But those mentioned are the only ones which the evidence shows were under the charge and control of separate foremen, and who had the authority to employ and discharge all persons employed in their respective departments.

The entire plant was under the general control of a general manager; and the respondent also had a general superintendent, Mr. Kridler, known as the "brew master," who had general supervision of all the departments of the plant, and, as before stated, the departments mentioned had a special or operating foreman.

Mr. Kridler, the general superintendent, was also the brew master, and had charge of the brew house, where the beer was manufactured and where appellant worked. There were employed in this department about twenty-five men, and about one hundred and fifty in the entire plant. Mr. Kridler employed and discharged those working in the brew house, and had the authority, as I understand the record, to discharge men from practically all of the different departments.

One Martiny was the foreman, or as he testified, the "wharf foreman," of the place where the grain was stored, but it seems that he was an all-round kind of a man, and was at times assigned by Kridler to do various kinds of work, as the occasion might arise, in other departments. At the time of the injury complained of, Martiny had been assigned to the storeroom, or cellar No. 1, which was on the second floor of the building, along side of which respondent was injured, to tear out the partitions, floors and joists, with the view of replacing the floor with concrete. Martiny was placed in charge of this work, and he went out and hired three or four men to assist him in doing that work, he acting as foreman.

They began the work on February 3, 1908, and completed it on March 24, thereafter.

The appellant was injured in a passageway, about fourteen or fifteen feet wide, between said stock house on the west, and the building in which were the engine and boiler rooms on the north and the brew house on the south, the latter building being on the east side of the passageway. Near the center of this passage there was located a railroad track, running north and south, but at the time it was but little used. This passage continued on south a considerable distance, between the malt house on the one side and the elevator building on the other.

This passageway was in common and general use by the employees of respondent, in going to and in returning from their work, there being a door opening from the brew house, where appellant worked, into this passageway. Whenever cars stood upon this track, which was about once a week, the employees did not use this passageway in going to and returning from their work. There were two or three other ways by which the employees could go to their work, but the one previously mentioned was the most direct and convenient route for those to go who lived north of the plant, one of whom was the appellant.

The appellant was injured by being struck with a heavy piece of timber about sixteen feet in length, and six by twelve inches in thickness, thrown from a window in the second story of the stock house, some sixteen or seventeen feet above the ground. This window was on the west side of the passageway, and about thirty-five or forty feet south of the north end thereof, the point where the appellant entered it.

As before stated, the appellant was injured on the 14th day of February, 1908, eleven days after respondent began tearing out the partitions and floors previously mentioned. The first materials removed from the building were light stuffs taken from the par-

titions and floors. This stuff was taken to the window and thrown out without ceremony, if the passageway was clear; but when they began moving the heavy timbers, some time before the accident, the exact time not shown, a watchman was stationed at or near the north end of the passageway, to warn the parties who were throwing the timbers from the window, when the passageway was clear. Under that arrangement, whenever the parties in the building wished to throw or push timbers from the window, one of them would halloo, "Look out below," or some such words, whereupon, the watchman below would, if the passageway was clear, answer, "All right," or some such words. After that was gone through with, the timber would be thrown out, which would take about fifteen or sixteen seconds from the time the people in the house received the answer, "All right."

This work of throwing out the timber was not continuous. It lasted at times for a few minutes or hours, or perhaps a half of a day; then there would be intervals at times for hours and days. The watchman was stationed at his post of duty only at those times when these timbers were being thrown from the window. The watchman was not always the same person. The foreman, when he got ready to resume the work of throwing out the timbers, would select a watchman and station him at his post. The watchman might or might not be the same person who acted in that capacity upon former occasions.

The evidence also shows that the employees of respondent had been notified that a watchman had been placed on duty, but were not informed as to who the watchman was, nor did they have any means by which they could ascertain those facts, except by seeing the watchman perform the duties of such.

At the time appellant was injured, Carl Ludwig was the watchman on duty, and he was instructed "to look out for the people so that nobody got struck, and

that if a plank stuck up straight and not in the row by the others, to pull it down and lay it flat." That is, "To keep people from going through while we was throwing out lumber."

Some of the witnesses testified that in pursuance to the foregoing instructions, the lumber, as it would be thrown out of the window, would be picked up and laid in a straight pile between the building and railroad track.

The appellant knew that timbers had been thrown out of the window of the stock house, and piled along the side of the wall, but he testified that he had only seen it done twice.

Appellant's hours of work were from three o'clock p. m. to eleven; and a few minutes before three, on February 14, 1908, in going to work, he passed around the north end of the stock house, and as he turned into the passageway, he glanced down and saw three or four men standing therein, about fifteen feet north of the point where he was injured.

He testified that about the same time he saw three or four pieces of lumber lying piled up along the wall of the building, but no one was throwing lumber out of the building at that time, nor was there any evidence that such was being done, that he saw.

Without looking up to the window he walked on south toward the door where he was working, and just as he reached a point almost under the window, something struck him and rendered him unconscious. The uncontradicted evidence shows that the thing which struck appellant was a piece of heavy timber thrown or shoved out of the window before mentioned, by Martiny and his men. That Carl Ludwig, the watchman on duty, was one of the men he saw and passed in the passageway before mentioned; that he did not know that Ludwig was the watchman or that a watchman was on duty and that Ludwig did not notify him

that the timbers were being thrown out at that time, or on that day.

Ludwig testified that when the timber was shoved out of the window so that it projected six or eight feet, the men in the building hallooed, "Look out below," and that he looked around to see if any one was coming, and seeing no one, he hallooed, "All right," and turned his head to watch the timbers, so as to keep out of their way. That he did not see appellant until he was struck. Ludwig also testified that at the time of the accident and prior thereto, there was a large pile of lumber, four feet in height, lying in the passageway, beneath the window before mentioned, scattered in all directions, just as it had fallen from the window. There was other evidence to the same effect.

There was other evidence which tended to show the passageway was obstructed frequently, at different intervals, almost every day, with the lumber which had been thrown out of said window, and that appellant saw it every day as he went to work.

That on the wall of the brew house, just at the north entrance to the passageway, was written or printed with chalk the words, "Danger," or "Danger; look out." The evidence, however, does not show the size of the letters, or how conspicuous the words were.

I. There are but two questions presented by the record to the court for determination, and they are questions of law; the first is one of contributory negligence; and the second is one of fellow-servant.

We will consider these questions in the order stated.

It is elementary that it is not only the duty of the master to provide a reasonably safe place for his servant to work, but a reasonably safe place where he properly resorts, on the premises, in connection with his employment. In the light of this general princi-

ple of the law, counsel for respondent do not contend that appellant did not make out a prima facie case, nor does the trial court question that fact, but a new trial was granted upon the ground of contributory negligence.

There is no question but what the record abounds with evidence which tends to show contributory negligence on the part of appellant, and probably it is stronger than I have stated it in the statement of the case; but it is equally true that there is other evidence, as before stated, which made out a prima facie case, and tended to contradict the evidence of contributory negligence.

But if we correctly understand counsel for respondent, their contention is this: They insist that since all the evidence in the case was introduced by appellant, he is bound as a matter of law by the evidence tending to show contributory negligence on his own part.

That insistence, in our opinion, is untenable, for the reason that it is a well established rule of evidence that a party litigant is not conclusively bound by the testimony of any one or more of the witnesses offered by him. That is true for the reason that the party offering a witness cannot always tell just what facts the witness will testify to; and it may be the witness may innocently testify falsely or willfully state an untruth. In either event, it would be unjust to deprive the party of his legal rights upon that character of testimony. That being true, the law in its wisdom has properly provided that the jury may consider and weigh all the evidence in the case, whether introduced by the plaintiff or defendant, and believe or disbelieve the testimony of any witness they may see proper. In other words, while a party will not be permitted to impeach his own witness, yet he will be permitted to introduce other evidence touching the same matters, though in doing so he discredits or contra-

dicts the testimony of his former witness. [Brown v. Wood, 19 Mo. 475; State v. Shapiro, 216 Mo. 359, l. c. 370; Fearey v. O'Neill, 149 Mo. 467, l. c. 473.]

Counsel insist that since the appellant was perfectly familiar with the situation, and saw the lumber scattered promiscuously in the passageway beneath the window where he knew respondent had been in the habit of throwing it out, that was such a warning to him of the then existing danger, that the law will not permit him to say that he did not see or know of the actual danger impending.

If that evidence had not been contradicted by other competent evidence, there would be great force in that insistence, but unfortunately for the respondent there was substantial evidence introduced by appellant tending to show that there was no lumber in the passageway except three or four pieces of timber piled up along the side of the building; that lumber was not thrown out at any regular or stated times, but at intervals with hours and days intervening, and only then after having placed a guard on duty to notify the persons throwing the lumber out that the way was clear, and to warn persons of the danger of entering the passageway; that the guard negligently failed to notify appellant of the danger; and that appellant was ignorant of the fact that a guard was on duty.

If that evidence were true, then, in our opinion, the court had no authority to declare as a matter of law that appellant was guilty of contributory negligence. If there was nothing to call the attention of appellant to the fact that lumber was then being thrown from the window, but the contrary was true, the negligence of the guard to notify appellant of the impending danger was to lull him into a sense of security and cause him to believe that Martiny and his men were not working in that building on that day.

If that were the condition of things and the actual state of appellant's mind, then what negligence was he guilty of? None, I submit, without it be true, as it is insisted, that the end of the timber which struck appellant was, when he entered the passageway, sticking out of the window some eight feet, and that he was guilty of negligence in not looking up and seeing it.

In answer to that insistence, it may be said that counsel for respondent, in order to excuse the negligence of Ludwig, in not seeing appellant approaching the place of danger, stated on page three of their brief, that it was thrown out so quickly (fifteen seconds) that he "turned his head to watch the timber so as to protect himself from its toppling over against him," and that he never saw appellant until he was injured.

Now if it be true that Ludwig did not have time, after hallooing "All right" to Martiny and his men, who were throwing the timber out, to look and see appellant and get out of the way of the timber, then by what process of sound reasoning can it be said that appellant had time to see it and get out of its way, when he was right under it, while Ludwig was at least fifteen feet away.

In our opinion there was ample evidence to carry the case to the jury, and that the court erred in holding to the contrary.

II.  It is next contended by counsel, that the motion for a new trial was properly sustained because appellant was injured through the negligence of his fellow-servant, and therefore the master is not liable.

In our opinion the evidence does not bear out this contention. It is uncontradicted that the entire plant covered nine acres of ground and consisted of many buildings, widely separated, some of them seven stories high, in which buildings the different departments

of the business are housed, with a foreman in charge of each department with authority, respectively, to employ and discharge the men under them; and the aggregate number of employees in all the departments was about one hundred and fifty, and there was a general superintendent who had charge and control of all the various departments, who also had the authority to hire and discharge any or all men working anywhere in the plant, also to transfer them from one department to another.

The employees in one department saw but little of those working in the other departments; and the character of the business conducted in one department, and the instrumentalities with which it was carried on, were wholly different from those of all other departments.

In this case the appellant was employed in the brewing department, and Martiny was the regular foreman of the elevator department, but some ten or twelve days prior to the accident complained of the general superintendent transferred him temporarily to the stock room, which was in an entirely different building from the brewing building, to tear out and remove the partitions and floors thereof, and replace them with concrete floors, etc. Martiny went out in the city and employed three or four men to assist him and they went to work to tear out the old partitions and floors.

Under this uncontradicted state of facts, we are unable to see how it can be logically contended that the carpenters and concrete workers in the construction department, doing work in the store house, or in any other department, for that matter, could be said to be fellow-servants with the brewers in the brewing department.

It is true Kridler had a general charge and control over all the departments, foremen and employees in the entire plant; nevertheless, that fact did not

make the individual employees of one department the fellow-servants of those of an entirely different department, any more than a bridge carpenter, in the construction department of a railroad company is a fellow-servant with the conductor on a train in the transportation department. Both may be and are often under the same general superintendent, but under separate departmental foremen. They are not fellow-servants.

[Tabor v. Railroad, 210 Mo. 385, l. c. 398; Koerner v. Car Co., 209 Mo. l. c. 153; McMurray v. Railroad, 225 Mo. 272, l. c. 305.]

Nor in principle can. it be held that the appellant and Martiny and his men were fellow-servants.

III.  Counsel for respondent next insist that the action of the court in granting a new trial was proper, for the reason that the cause of action stated in the petition was the failure of respondent to exercise ordinary care in throwing timbers from the window mentioned, and in not warning appellant of that fact. They also insist that instruction numbered one, given for appellant, submitted to the jury a different cause of action from that stated in the petition.

After a careful reading of the petition there is no doubt but what the petition charges both the carelessness of respondent in throwing the timber out of the window, and negligently failing to notify appellant of that fact, that is, it was the duty of the respondent to furnish a watchman to warn appellant of the danger, when the timbers were being thrown out, and that the watchman negligently failed to so notify him; or more briefly stated, the injury was the result of both of the negligent acts before mentioned.

So much of said instruction as is necessary for a proper understanding of this question, reads as follows:

''The jury are instructed that if they find and believe from the evidence that on or about the 14th day of February, 1908, the plaintiff was an employee of the defendant, Kansas City Breweries Company, at a brewing plant called Heim Brewery in Kansas City, Missouri, and that the plaintiff in pursuance of such employment was walking upon the premises of said defendant on his way to the place of his employment for the purpose of proceeding with his work, and that the place where the plaintiff was walking was one commonly, generally and customarily used by the employees of said defendant during the course of their employment, and in going to and from the same, and that this was known, or by the exercise of ordinary care should have been known, to the defendant, and that at said time said defendant was engaged in throwing timbers from the second story of one of its buildings adjacent to such passageway and that such timbers were of such size and character and being thrown under such conditions that the employees throwing the same were unable to reasonably provide against the fall thereof upon persons in such passageway, and that said defendant had been so engaged at intervals from time to time for some weeks prior to said time, and that said defendant, for the purpose of protecting employees using such passageway from injury from such timbers, had, to the prior knowledge of plaintiff, provided a watchman to stand in such passageway at the time such timbers were thrown to warn employees against using such passageway at a time when timbers were being thrown, and that while the plaintiff was using such passageway at the times aforesaid, a timber was thrown so that same fell upon and injured the plaintiff, and that the watchman provided negligently failed to warn the plaintiff that a timber was about to be thrown, or otherwise warn the plaintiff, and that the plaintiff's injury (if any) were the direct result of such negligence (if any),'' etc.

By reading this instruction it will be noticed that it eliminates from the case one of the elements which the petition charged resulted in the injury, namely; that it was the *duty of the respondent to furnish a watchman,* etc., and submits the case to the jury upon the theory that respondent had theretofore customarily stationed a watchman in the passageway to notify employees of danger; that appellant knew of that custom and relied upon it; and that at the time of the injury the watchman negligently failed to warn him of the danger, and that in consequence thereof he was injured.

. From this it is seen that the court authorized the jury to find for appellant, if they believed from the evidence that respondent had theretofore furnished the watchman, without further requiring them to find the fact that it was *his duty to furnish* such watchman, as charged in the petition.

The vice of this instruction is, that it authorizes a recovery from the *mere fact that the respondent furnished* the watchman on previous occasions, regardless of the question of his duty to so do. If respondent owed appellant no duty to station a guard there, then the mere fact that he assumed that duty, would not, of itself, render him liable, without we should adopt the theory of the instruction, namely; that said custom misled appellant and lulled him into a sense of security, and thereby caused him to go into the place of danger, which he would not otherwise have done. But this custom was not stated in the petition as a ground for a recovery, which will be presently considered.

The law is well settled that if the master was under no legal obligation to furnish a watchman to warn persons of danger, the mere fact that he voluntarily assumes that duty would not of itself render him liable for failure to so do.

In discussing this principle of law, this court in the case of Barney v. Railroad, 126 Mo. 372, l. c. 392, in speaking through SHERWOOD, J., said: "But plaintiff's counsel says that defendant assumed the duty of keeping its yards clear of boys, by giving instructions to its yard hands, etc.; but that this duty was neglected and therefore a cause of action arises alone from this neglect. But if the prior duty *did not exist* to keep the boys out of the yards, then the mere assumption of a nonexistent duty would be but a gratuity, with no precedent or concurrent consideration on which to base it, and therefore no liability would follow such assumed and pretermitted duty. Mere pretermission of a self-imposed precaution does not constitute actionable negligence."

If this charge of duty to furnish the watchman was properly omitted from the instruction, then it could have been properly omitted from the petition. Now, if omitted from the petition, the only remaining act of negligence charged would be the general statement, that the lumber was negligently thrown from the window, with stating the facts constituting the negligence. While this general charge of negligence might ordinarily have been sufficient after verdict, but not so in this case, for the reason that there was no evidence introduced to support it. The evidence failed to show that the mode or manner of throwing the lumber from the window was negligence, but it did tend to show that the omission to furnish a watchman to warn employees of the danger incident to the careful mode or manner of throwing it was negligence and that said negligence was the cause of the injury. That being true, it necessarily follows that the instruction given was erroneous, because of the variance between the petition and the instruction, without it can be held good, upon the theory contended for, that the custom before mentioned to furnish a watchman, was known

to appellant and that relying upon the custom, he was lulled into a sense of security, and that in consequence of said negligence of the respondent in failing to furnish the watchman, he was injured.

This contention will not cure the error pointed out in the instruction, and consequently will not bridge the chasm existing between the instruction and the petition, because it broadens the issues made by the pleadings and authorizes a recovery upon a ground not stated in the petition.

GRAVES, J., in a separate concurring opinion in the case of Black v. Railway Co., 217 Mo. 672, 1. c. 685, clearly stated the rule applicable to this state of facts, in the following language: "In other words, a correct and proper instruction must be (1) an instruction based upon and authorized by the evidence, and (2) an instruction in no wise going beyond the purview of the pleadings. If in the trial of a cause the court permits the evidence to assume a broader scope than indicated by the petition, such does not authorize an instruction broader in terms than is the petition. 'A court does not possess the power to change by instruction the issues which the pleadings permit.' [Bank v. Murdock, 62 Mo. 1. c. 73.]"

There are no rules of pleading or evidence which will support this instruction.

We are, therefore, of the opinion that the order of the court granting a new trial was proper, because it gave the erroneous instruction mentioned.

The judgment is affirmed. All concur.