OLIVE VITALE v. MARY DUERBECK, Executrix of WILLIAM DUERBECK, Appellant.—62 S. W. (2d) 559.

Division One, June 12, 1933.

*Wayne Ely* and *Tom Ely, Jr.*, for appellant.

1186

*Kratky, Spencer, Soffer & Nessenfeld* for respondent.

STURGIS, C.—This is a companion case to that of Helen Bloecher v. Estate of William Duerbeck, 333 Mo. —, 62 S. W. (2d) 553, argued and submitted to this court at a previous term, but the opinion in which is handed down concurrently with this case. This suit is for personal injuries to the wife of Sam Vitale, tenant of William Duerbeck, growing out of the same explosion of an Arcola hot water heater placed in the rented premises by the landlord, William Duerbeck, the facts as to which are set forth more fully in the Helen Bloecher case, to which reference is here made, and same need not be repeated here. It will suffice to say here that the conceded explosion of this hot water Arcola heater resulted in very severe injuries to this plaintiff, as well as to her sister, Helen Bloecher, plaintiff in the other case. The pleadings and issues are much the same in both cases. In each case the plaintiff seeks to recover damages for personal injuries on account of the explosion of the heater caused by the

defective manner in which it was installed, constituting negligence on defendant's part. The case was brought and tried against William Duerbeck, now deceased, and we will treat him as the defendant.

In each of the cases the question of defendant's negligence in that the installation and construction of the heating plant was defective narrowed down to the disputed question of whether the air vent in the hot water pipe was placed at the highest point in the hot water system, and whether the safety valve was placed in such an exposed place that it was likely to and did freeze on this occasion. It was shown by all the evidence and practically conceded that in heating with hot water pipes and radiators the hot water pipe should ascend from the heater to the highest point in the circulatory system, where there should be an air vent or escape to prevent an air pocket forming at that point in the pipe, which is sure to happen unless thus prevented. The hot water pipe should then constantly descend to and through the radiators with a return pipe to the heater. Air will accumulate at the highest point in the circulatory system and unless drawn off at that point will form an air pocket which will effectually obstruct the water circulation at that point. When this happens the water in the heater becomes overheated, turns to steam, and may cause an explosion.

One of the grounds of negligence claimed in this case is that the air vent or escape was not placed at the highest point in the hot water system. It is also conceded that a hot water system like the one in question should have a safety or steam escape valve installed somewhere along the return line, so constructed that it will automatically open in case of excessive pressure and allow the steam to escape. Such a valve, called a Mueller valve, was so installed on this line, but plaintiff contends that the place of installation was in an open and exposed place in the basement so that in extreme cold weather it was likely to and on this occasion did freeze up so that it did not function. It should be here said that the plaintiff's claim is not that the return pipe itself froze so that ice therein obstructed the return flow of the water, but rather that ice formed in the seat of the safety valve connected with such pipe and thereby prevented the valve opening and thus reducing the excessive steam pressure caused by the obstructed circulation in the pipes due to the formation of an air pocket, which, as plaintiff claims, was in turn due to the air vent not being placed at the highest point in the circulatory system. Other grounds of negligence are that there should have been, but was not, a thermometer attached so as to indicate excessive heat inside the water pipes, and also a pressure or altitude gauge to indicate when the water was too low in the system. These, however, were mere safety devices which might warn the operator of the plant of the dangerous condition, if such existed. The defendant's contention on

the merits of the case is that the explosion was caused by the kind of fuel burned in the fire box and not by any excessive pressure in the hot water pipes and coils; that the tenant, Sam Vitale, used for fuel the refuse of his shoe shop, leather and rubber scraps, and that this caused what is termed a fire box explosion from gas formed inside the fire box and not from steam inside the water pipes. If this was the cause of the explosion, then such explosion and the resultant injury was due to the tenant's fault in using that kind of fuel instead of coal, and, of course, defendant is not to blame. The vital question at issue is whether the explosion causing plaintiff's injury was an internal steam pressure explosion due to faulty construction of the hot water system or was an external fire box explosion due to the use of improper fuel and the method of firing.

The present case was tried later and by a different judge and jury than was the Helen Bloecher case and there is some, though not very material, difference as to the evidence and witnesses used at the different trials. The present case resulted in a verdict for defendant. The plaintiff then filed her motion for new trial on several grounds, which the court sustained on two grounds, to-wit: (4) That the court erred in giving erroneous instructions on behalf of the defendant, and (7) "the verdict of the jury is against the law and the evidence and the weight of the evidence." The appeal is by the defendant from the order granting plaintiff a new trial.

█ The defendant interposed in the present case, as it did in the Helen Bloecher case, the defense of independent contractor in that, even if the cause of the explosion and injury was a faulty and negligent construction and installation of the heating system, yet that defendant employed and entrusted the construction and installation of this heating plant to an independent contractor, having no direction, supervision or control over him as to furnishing the material or doing the work, and holding him responsible only as to the result. The court, on behalf of the defendant, instructed the jury to the effect that if the work was done by and through an independent contractor, the defendant would not be liable unless it be shown that he was negligent in not selecting a reliable and competent contractor to do the work. We have again examined the question of whether the defense of having employed and entrusted the doing of this work to a competent and skilled independent contractor is applicable to the facts of this case. We are constrained to adhere to our ruling in the Helen Bloecher case, supra, and hold that this doctrine has no application here. It comports both with reason and authority that when a landlord undertakes to make repairs or improvements to his own building for his own or his own and his tenant's joint benefit, he is not relieved of liability for the negligent or defective performance of the work itself, as distinguished from a causal or

collateral tort or injury inflicted during the performance of the work and incident thereto, by reason of having entrusted the work to an independent contractor. Where the work is negligently done and thus a danger is created which inheres in the finished product accepted by the landlord, such landlord is liable irrespective of the independent status of the workman selected and employed to do that work.

Thus in Blumenthal v. Prescott, 75 N. Y. Supp. 710, 713, the court ruled: "The defendants, if not bound in the first instance, assumed, by their representatives, the Le Conte estate, to make the repairs. If they did so, they were bound to make them with diligence and care. They could choose their own method of doing the work. They could do it themselves, or they could make a contract with others to do it. But, whichever method they adopted, the doing of the work was their act. They were simply fulfilling their contractual obligations to the plaintiffs, who had no interest in the manner of its being done, or by whom."

In Peerless Mfg. Co. v. Bagley, 126 Mich. 225, 85 N. W. 568, 569, the court said: "To apply the rule to the present case, it may be thus stated: Where a landlord undertakes to make repairs or improvements for his tenant, he cannot relieve himself of the consequences of neglect in the performance of his agreement by employing an independent contractor."

In Wertheimer v. Saunders, 95 Wis. 573, 70 N. W. 824, 827, the law is stated thus: "Inasmuch, therefore, as the defendants, as landlords, owed the plaintiff, their tenant, a special duty, growing out of their relation as such, to use reasonable care to protect the plaintiff's property in the building from injury by the elements while repairing the roof or putting on a new one, as they had undertaken or assumed to do, at his request, they became liable for the performance of such work in an insufficient or negligent manner, although the work was so performed by them by independent contractors."

In R. C. H. Covington Co. v. Masonic Temple Co., 176 Ky. 729, 197 S. W. 420, the court stated the law thus: "It is true that in making repairs to and improvements upon property which has been let to rent, although the work is done gratuitously by the landlord, he owes a debt of reasonable care to the occupying tenant, and he cannot absolve himself from the liability by employing an independent contractor to do the work, if the work to be done is attended with danger to the tenant."

In Dalkowitz v. Schreiner (Tex.), 110 S. W. 564, the court, after citing many cases, said: "The above cases also serve to show that the rule of independent contractor does not avail to relieve appellee of responsibility. The contractor was her representative in and about the work, so far as appellants are concerned."

In Doyle v. Franek, 118 N. W. 468, the Supreme Court of Nebraska ruled this question by saying: ''Conceding that the relation of landlord and tenant existed between the parties to this action, we think it is clear that the landlord is not relieved of liability for injury to his tenant by the fact that he employed an independent contractor to perform the work of moving the house. So long as the relation of landlord and tenant existed between the parties, the landlord owed a duty to the defendant not to do, or cause to be done, anything that would render the premises dangerous and unsafe for his tenant. Where one owes an absolute duty to another, he cannot acquit himself of liability by delegating that duty to an independent contractor.''

Many other cases might be cited along this line. We hold, therefore, that the trial court properly granted a new trial in this case for having erroneously instructed the jury as to the defense of having employed an independent contractor.

■ The court in this case properly instructed the jury that if the explosion was an exterior or fire box explosion, and not due to excessive steam pressure inside the water pipes, to find the issues for defendant. The refusal to give a similar instruction in the Bloecher case was held to be error.

■ Defendant strenuously insists that there is no substantial evidence in this record showing negligence in constructing and installing the heating plant with the air vent or escape not at the highest point in the circuit. We have read the evidence on this point as contained in this record with care and cannot agree to this contention. The evidence is stronger in plaintiff's favor on this point in the present record than in the Helen Bloecher case. Two witnesses testified that on making an examination of the premises and wrecked heater after the explosion, it was found that the point directly over the heater where the air vent was connected was not the highest point in the hot water line; that the horizontal pipe near the ceiling was some four or five inches higher at the point where it turned downward to the first radiator. Defendant contends that this was true only after the explosion and that the explosion and wrecking of the heater itself lowered this water pipe at the point directly over the heater which had before been the highest point. The evidence, however, is not at all conclusive on this point, but rather tends to show that the water pipe was in the same position after as before the explosion. It is not necessary to detail such evidence. ■ We might say in this connection that while plaintiff used as her witness, in order to prove other matters, the contractor who installed the heating plant, and he testified that he placed the air vent at the highest point in the system, yet this did not preclude plaintiff from proving the contrary by other witnesses. [Holland v. Missouri Pacific Rail-

road Co., 210 Mo. 338, 348, 109 S. W. 19; Schumacher v. Kansas City Breweries Co., 247 Mo. 141, 154, 152 S. W. 13; Maginnis v. Missouri Pacific Railroad Co., 268 Mo. 667, 675, 187 S. W. 1165; State ex rel. v. Cox (Mo.), 293 S. W. 122, 126.] There is also expert evidence that an air pocket did exist in this water pipe, and the experts who examined the wreckage and broken parts of the water heater after the explosion testified that same clearly showed that the explosion was an internal one caused by excessive steam pressure within the coils and pipes, and was not an external or fire box explosion. The trial judge, who had the advantage of seeing and hearing the witnesses and receiving the evidence first-hand. not only thought that there was substantial evidence supporting plaintiff's theory of the cause of the explosion, but that the contrary finding by the jury was against the weight of the evidence. Much the same is true of the evidence supporting the contention that the Mueller safety valve failed to work on this occasion because of ice forming at the valve seat.

█ If there is any substantial evidence supporting plaintiff's contention as to defendant's negligence in installing this heating system, and we hold that there is, then it was the exclusive province of the trial court to weigh the evidence and determine whether the verdict of the jury is against the weight of the evidence. This court cannot interfere with the trial court in that respect. [Hunt v. Gillerman Iron & Metal Co., 327 Mo. 887, 39 S. W. (2d) 369, and cases there cited.]

█ We have noted but find no substance in the suggestion that the motion for new trial is not sufficiently definite to raise the point that the verdict is against the weight of the evidence. The motion itself says that the verdict is "against the law and the evidence and the weight of the evidence." Such motion is addressed to the court and evidently the court understood it. [Riche v. City of St. Joseph, 326 Mo. 691, 32 S. W. (2d) 578.]

The ruling of the trial court in granting plaintiff a new trial is affirmed. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.