Henry Epstein, J.
Plaintiff is a dealer in early American antiques and has for some 18 years conducted her business in the premises 931 Third Avenue, New York City. The store at street level and the basement including the vault beneath the sidewalk comprise the space used by plaintiff. Her shop is recognized as one of the high-grade dealers in Americana. This action is brought against the Manufacturers Trust Company as landlord (acting as committee for the incompetent Quinn) and the Arrow Construction Co., Inc., contractor performing work under contract with the landlord’s agent in the widening of Third Avenue between December, 1955 and the end of March, 1956. The claim is based on the alleged market value loss due to damage of some 1,015 articles of plaintiff’s inventory. The damages claimed are alleged to have resulted from infiltration of dust, dirt, moisture and vibration into plaintiff’s premises from the sidewalk and street work performed by defendant Arrow under the contract with Cross & Brown, landlord’s agents. With few exceptions the witnesses on both sides gave testimony tinctured with an understandable bias. However, there was considerable evidence of a documentary character as well as physical exhibits before the court during the trial. In order the better to formulate its conclusions and to obtain firsthand objectivity the court with consent of counsel and parties spent a full hour in the premises at 931 Third Avenue on the morning of December 13, 1958. On this visit the court was aided by the courtesy of plaintiff’s employee Thatcher in viewing the entire premises, upstairs at street level, and below at the basement level. Particular attention was paid to articles on which the more substantial claims for damages were based and to the structure of the premises.
Defendant Arrow was explicitly urged to expedite the work for which it was employed on December 27,1955, due to pressure from the city authorities. The supervision of the work of Arrow was to be carried out by a Mr. Schiller, an employee of Cross & Brown, managing agents for the landlord. Work had to be commenced immediately. In connection with such work the memorandum of instructions to the contractor, in addition to defining the work in detail, expressly directed for arrangements to be made for plaintiff as tenant to remove ‘ ‘ paneling and stock to accommodate the alteration work ”. “ Protectives, tarpaulins, planking ” etc. were to be furnished to protect “ the *514 vault area and cellar free from the intrusion of weather, rain, snow and dirt.” Work was begun at the end of December, 1955, or the first week in January, 1956 and finally completed by March, 1956. The major portion of the work was finished within about three weeks and later some further repairs were done before the city authorities were fully satisfied. Final acceptance by the city is certified by notice from the Borough President’s office on April 4, 1956.
At the opening of the trial plaintiff was permitted to amend her bill of particulars so as to increase the damages to item No. 1008 of the bill of particulars from $3,375 to $18,375, and the total claim for damages correspondingly from $55,000 to $70,000. This item comprises some 45 painted wooden figures in a collection. These are about life size and include what are commonly known as ‘ ‘ cigar store ’ ’ Indians and a variety of other male and female figures used for display in front of stores in the early period of our history. Some uses of these are within the memory of many of us, even in New York City. In smaller communities across this land they are probably better remembered. A careful view of these figures does not persuade this court that the evidences of deterioration in the wood, or in the paint and color, were due to the work undertaken by defendants. Exposure to the elements over the many years in which they were used would have brought them to their present state. Another item of substantial damage set up in the bill of particulars is numbered 1002 and comprises ‘ ‘ 6,000 paper toys ” valued at $6,000. The claim for these is based on alleged total loss due to moisture and crushing. They were said to have been packed in cartons and placed near the inner wall of the vault area. Significantly none of these was preserved so as to have them presented as evidence. None was offered and we have only the word of plaintiff and her employee to this effect. Such proof or absence of proof can hardly be regarded as a basis for an award of damages.
When the city ordered the major construction to be carried out on Third Avenue the plaintiff was told by Schiller on behalf of Cross & Brown and the landlord bank as trustee that the vault space would be affected. She knew a new west wall would have to be constructed and was instructed to move her merchandise from five to eight feet from the vault wall to make said space available for workmen. The contractor was taken to the basement and there with plaintiff and her employees the work to be done was explained. A clear conflict of testimony exists on whether plaintiff was told she would be protected during the *515 construction taking place in the vault area. Schiller told plaintiff he would not move her antiques — and the testimony indicates that plaintiff actually forbade them to touch her merchandise. Thatcher did what he probably could to cover most of the articles in or from the vault, but it is doubtful that space could be found for all the articles in the vault area. Plaintiff was only in the store for short periods and left the shop and its care practically entirely to Thatcher.
Since it would appear that most of the damages would have occurred in the vault area, it is well to consider the lease provisions with regard to this part of the premises. Paragraph “ 14 ” of the lease expressly excludes the vault space from the terms of the lease and such space 1 ‘ not within the property line of the building, which tenant may be permitted ’ ’ to use is on a revocable license and subject to the requirements of the ‘ ‘ Municipal Authority ’ ’, without any compensation for what might be ‘ ‘ constructive or actual eviction ’ ’. Plaintiff’s counsel seeks to escape this provision as a “ printed clause ”, equating it to other clauses relating to nonexistent elevators, etc. Yet we have here a clear provision in the lease explicit in its applicability to just what has occurred. It is not for the improper maintenance of the vault that this plaintiff seeks a recovery, but for the damages due to a reconstruction in the vault area for which defendant landlord has expressly exempted himself. However, in view of the conclusion hereinafter reached by the court, this item is not the criterion by which this decision is to be measured.
From the evidence in this case it is clear that plaintiff has on some 15 to 18 occasions in prior years recovered for damages due to moisture and leaks in the premises from pipes and wall moisture from the saloon premises in the adjoining building. A view of the condition of the pipes and wall construction convinces the court that much of what is claimed to be due to the construction complained of herein may well be attributed to the same prior causes. There is no convincing evidence on which this court can conscientiously make an award of damages to plaintiff in this case. If we add the provisions of paragraph 8 of the lease to that of paragraph 14 we are forced, on the evidence in this case, to hold the defendant landlord free from liability. We are thus confronted with the following residual questions: Whether Arrow did its work in a negligent manner and thus caused the damage complained of; whether plaintiff was in any manner contributorily negligent. The answers to these questions could not be fairly found without a visit to the *516 premises. This court cannot escape the conclusion, after going through every part of the premises and viewing many of the articles remaining, which are claimed to have been damaged by the work of defendant Arrow, that it would be grossly improper to attribute the alleged deterioration in these articles to defendant’s work. Plaintiff knew and was cautioned in advance on the nature of the work to be done. She was on notice to take care of what she considered her valuable merchandise so that the work might not endanger it. Before the work was commenced plaintiff was fully warned and charged with notice of the expected possible dust and the protection to be furnished. She alone was the one who should have arranged to have taken the proper care to protect these allegedly “ precious ” antiques. Plaintiff knew the nature of the work to be done. She should have taken reasonable care to protect what she considered valuable merchandise. If the damages which are attributed to defendants by plaintiff actually occurred as plaintiff claims, then plaintiff must be considered to have in no small degree contributed to such loss and cannot, therefore, recover (Delaney v. Philhern Realty Holding Corp., 280 N. Y. 461; Knight v. Village of Fairport, 283 App. Div. 997; Nicholas v. New York State Elec. Gas Corp., 308 N. Y. 930).
Most of the work in the vault was done within a few days and the sidewalk break which might have caused the dust to enter was all done in one day. If there was dust on the plaintiff’s objécts, that could have been cleaned up at once. Schiller, who supervised Arrow’s work, discussed with Cuneo, who was in charge of Arrow’s work, the need for any vault partition. An inspection of the new wall which met the city’s qualifications shows some evidence of a peeling of the paint or whitewash covering. So also is this observed of the walls which have separated plaintiff’s premises from the cellars of adjoining properties. Yet plaintiff herself was not present when the actual work allegedly causing the claimed damages was performed. Nor would she allow the contractor to clean the dust or touch her articles. This court cannot indulge in arrant speculation on how or when the claimed damage took place. At least one substantial article, a gold leaf covered figure of an eagle, from the contents of the Grand Union Hotel of Saratoga, New York, which was unsalable at the auction of its furnishings and later purchased from the auctioneer by plaintiff, sold for $5,000, despite alleged damage. This court does not believe that the cost to plaintiff has any bearing on the plaintiff’s right to recover for damages. The price in the market for such *517 antiques or curiosities may be high and plaintiff is entitled to such a basis for recovery if the damages can reasonably be placed at the door of either or both defendants. Unfortunately in this case the court could not, from the evidence at the trial and even less after viewing the premises, attribute the claimed damage, if such had occurred, to actions of defendants. Even plaintiff’s expert, Mr. Albert Sach, in testifying concerning the one definite article he was interested in possibly purchasing, said he did not witness any deterioration until between 1957 and 1958, more than a year after all the work and alleged damage therefrom had passed. He said he would have noticed it if such paint color deterioration had occurred before 1957. Plaintiff’s “ consulting engineer ” witness found alleged concrete dust as late as November, 1958. When inspected by the witness Kraft (an expert for plaintiff’s insurer) the dust was still covering such objects in March, 1957, over a year after the alleged dust damage. The witness Rahl in large measure corroborated Kraft. The court found no dust on December 13. The testimony of the witness Taylor, employee of insurance adjusters and a friend of plaintiff, added little to plaintiff’s case. It was he who had adjusted her prior claims.
This court does not find it necessary to comment on the possible liability over of the contracting defendant Arrow to to defendant Trust Company, landlord, since the evidence is not considered sufficient to warrant a conclusion of negligence by either of the two defendants. Guesswork is no substitute for evidence (Broadway Photoplay Co. v. World Film Corp., 225 N. Y. 104; Esterowicz v. Alotun Corp., 109 N. Y. S. 2d 480). However sympathetic the court may feel for plaintiff’s dilemma, if such exists, it cannot allow this to substitute for credible evidence or testimony.
Careful consideration has been given to the cases cited by plaintiff’s counsel in his brief. Each case must stand on the factual merits established. Such cases as Cadby v. Hill (231 N. Y. 323); Blumenthal v. Prescott (70 App. Div. 560) and Paltey v. Egan (200 N. Y. 83) are not helpful.
Motions by defendants to dismiss complaint on the merits granted. It is thus unnecessary to pass on the motions of the defendants regarding possible liability vis-a-vis each other. Judgment may be entered dismissing complaint, without costs. Findings and conclusions having been waived, the above constitutes the decision herein.