Francis R. Stout and Karl P. Spencer, both of St. Louis, Mo., for appellant.

Frank H. Sullivan, Vincent L. Boisaubin, and Jones, Hocker, Sullivan, Gladney & Reeder, all of St. Louis, Mo., for appellees.

## COLUMBIA PICTURES CORPORATION v. LAWTON–BYRNE–BRUNER INS. AGENCY CO. et al.

No. 9914.

Circuit Court of Appeals, Eighth Circuit.

Oct. 10, 1934.

Before SANBORN and WOODROUGH, Circuit Judges, and DEWEY, District Judge.

DEWEY, District Judge.

Appellant by petition in intervention seeks to recover from the receiver of the St. Louis Properties Corporation moneys in his hands alleged to have been received by the St. Louis Properties Corporation as a trust fund in exhibiting a motion picture film.

The evidence establishes and the trial court found that the Skouras Super-Theatres Corporation and the Columbia Pictures Corporation entered into a contract dated July 28, 1931, for the right to use and exhibit in the Ambassador Theater at St. Louis, Mo.,

a certain motion picture film entitled "War Correspondent."

On July 28, 1932, at midnight the St. Louis Properties Corporation took possession of the Ambassador Theater and beginning with July 29, 1932, operated the theater until August 19, 1932, when a receiver was appointed for the St. Louis Properties Corporation.

The picture film "War Correspondent" was left in the Ambassador Theater by the Columbia Pictures Corporation on Thursday afternoon, July 28, 1932, and was exhibited by the St. Louis Properties Corporation for seven days from July 29 to August 4, 1932, both dates inclusive.

The Columbia Pictures Corporation, appellant herein, filed a bill of intervention in this proceeding pending in the District Court of the United States in and for the Eastern District of Missouri, Eastern Division, wherein a receiver had been appointed for the St. Louis Properties Corporation, alleging, among other things, that on July 28, 1932, the St. Louis Properties Corporation agreed to perform the contract entered into between the Skouras Super-Theatres Corporation and intervener with reference to the use and payment for said film, and that the St. Louis Properties Corporation adopted said contract as its own contract. The original contract contained many provisions regarding the use, payment, and duties of the parties with respect to the film, and among such provisions is the following sentence: "The Distributor's share of the gross receipts as aforesaid due the Distributor hereunder, shall belong to the Distributor and shall be held in trust for the Distributor until paid to the Distributor; and the ownership of said trust fund by the Distributor shall not be questioned whether the moneys are physically segregated or not, and the Exhibitor agrees to keep such portion of the gross receipts as are payable to the Distributor hereunder, segregated and in a separate and distinct fund."

The receiver of the St. Louis Properties Corporation admitted the use of said film by the St. Louis Properties Corporation, but denies that it assumed the contract with the intervener. He says he is advised that there arose therefrom an obligation to pay a reasonable compensation for such use, but denies any other liability.

The chancellor found that the St. Louis Properties Corporation did agree with the intervener to pay for the use of said picture film in the sum of $2,500 as provided for in the contract of July 28, 1931.

The chancellor also found, "There was no agreement between the intervener and the St. Louis Properties Corporation whereby any part of the gross receipts while the film was being exhibited were to be held in trust for the intervener," and that "the only part of the contract of July 28, 1931, * * * which the St. Louis Properties Corporation adopted as a part of the agreement with the intervener, was the one involving the amount to be paid for the use of the film 'War Correspondent' "; and as a conclusion of law found that the amount of $2,500 should be established as a general claim and not as a preferred claim against the receiver and in favor of the intervener.

[redacted] The appellant presents nine assignments of error, but all of them are mere general charges of error on the part of the court in not entering judgment or decree or in the general conclusions of law, except assignments of error Nos. 7 and 8. Such general assignments cannot be considered. Stoffregen v. Moore, 271 F. 680 (C. C. A. 8); Arkansas Anthracite Coal & Land Co. v. Stokes, 277 F. 625 (C. C. A. 8).

The seventh and eighth assignments of error are as follows:

"(7) The Court erred in its finding of fact that there was no agreement between the intervener and the St. Louis Properties Corporation whereby any part of the gross receipts while the film was being exhibited were to be held in trust for the intervener.

"(8) The Court erred in holding in its finding of facts that the only part of the contract of July 28, 1931, between Skouras Super Theatres Corporation and Columbia Pictures Corporation which the St. Louis Properties Corporation adopted as a part of the agreement with the intervener, was the one involving the amount to be paid for the use of the film 'War Correspondent.' "

The claim of the appellant in its bill of intervention, as we understand it, is that there was an agreement between it and the St. Louis Properties Corporation, after the latter had taken possession of the film, with reference to the use and payment for said film, and the further claim that the St. Louis Properties Corporation adopted said contract as its own contract. These allegations presented questions of fact for the chancellor, which he determined as above set out.

From a careful examination of the evidence, we are satisfied that it does not es-

tablish that in the agreement referred to the St. Louis Properties Corporation adopted in its entirety the contract theretofore existing between the Skouras Super Theatres Corporation and the Columbia Pictures Corporation.

Mr. Clarence D. Hill testified for the intervener that he was the agent of the Columbia Pictures Corporation, and that on Saturday morning, July 30, 1932, he had a conversation with Mr. Raymond Jones, manager of the Ambassador building, part of which is as follows:

"Q. State what the substance of the conversation was—A. Well, I asked Mr. Jones who was going to pay us for the picture, and he stated the St. Louis Properties Corporation would pay us for the picture, and I wanted to know when, and he told me some time within a few days after the run of the picture, as always customary * * *

"Q. Well now, what, if anything was said about the contract? A. I presented a contract, and they said—Mr. Jones said that they would play the picture and pay for the picture in accordance with the terms of the contract, that they would take over that part of the contract, and that picture."

And on cross-examination the witness testified as follows:

"Q. Well, Mr. Hill, what you were interested in was, when you went down there, was to see that you got paid for the playing of this particular picture 'War Correspondent'? A. That is right.

"Q. And to see how much you were going to get for it, isn't that right? A. In accordance with the terms of the prevailing contract. I was not interested in making any other kind of bargain, because I had another market for that particular picture.

"Q. All right. And you discussed the payment for that particular picture with Mr. Jones, is that right? A. I did.

"Q. And he agreed to pay you what this contract called for, is that right? A. That is right."

This evidence was corroborated by John Morfit, a salesman for the Columbia Pictures Corporation.

From this and the other evidence adduced at the trial, it is apparent that the chancellor had for determination the fact questions as to whether or not there was an agreement between the parties, and, if there was, whether that agreement was with respect to the adoption of the contract in its entirety or only that part thereof that had to do with its payment.

The parties could agree to a modification of the original contract and an assumption of an indebtedness, as provided by the terms thereof, without adopting the entire contract as a complete novation thereof. Columbia School Supply Co. v. Calico Rock Special School Dist., 158 Ark. 640, 248 S. W. 565; Baker v. Green, 17 Ala. App. 290, 84 So. 545.

It is true and this court has expressly recognized a rule of law that it is not necessary that a party should deliberately agree to be bound by the terms of the contract to which he is a stranger, if having knowledge of such contract he deliberately enters into relations with one of the parties which are only consistent with the adoption of such contract. Self v. Prairie Oil & Gas Co. (C. C. A.) 28 F.(2d) 590. This rule is based upon the ground of estoppel. Wilson & Toomer Fertilizer Co. v. American Cyanamid Company (C. C. A.) 33 F.(2d) 812, 814.

The intervener alleged, however, and the court found that there was an express agreement between the manager of the St. Louis Properties Corporation and the agent of the intervener. If such an agreement were made, evidence bearing upon the question of the adoption of the contract by estoppel becomes unimportant, as the use of, and the conduct of the parties with reference to, the subject-matter would be controlled by the agreement.

Where the findings of fact of a chancellor are based upon oral testimony, they are presumptively correct and will not be disturbed unless palpably erroneous. Gorham Mfg. Co. v. Emery-Bird-Thayer D.-G. Co., 104 F. 243 (C. C. A. 8); Manhattan Life Ins. Co. v. Wright, 126 F. 82 (C. C. A. 8); Babcock et al. v. De Mott, 160 F. 882 (C. C. A. 8); Fay v. Hill, 249 F. 415 (C. C. A. 8); Hamlin et al. v. Grogan, 257 F. 59 (C. C. A. 8); Unkle v. Wills, 281 F. 29 (C. C. A. 8); Conqueror Trust Co. v. F. & D. Co., 63 F.(2d) 833 (C. C. A. 8).

The appellant also contends that as the film was copyrighted and was used without authority, it will be presumed that the St. Louis Properties Corporation was a trustee ex maleficio of the receipts from the unlawfully exhibited film, and that such receipts are a trust fund. These contentions were not raised by the issues, passed upon by the chancellor, nor raised in this court by an assignment of error. Under this situation they are not here for decision; but such conten-

tions are answered by the findings of fact of the trial court.

■ We are satisfied that the court's findings of fact were correct, and that the decree of the court appealed from should be, and the same is hereby, affirmed.