**STANDARD BRANDS, Inc. v. BATEMAN et al.**

No. 14106.

United States Court of Appeals
Eighth Circuit.

Nov. 13, 1950.

Rehearing Denied Dec. 5, 1950.

See also D.C., 9 F.R.D. 555.

Albert Thomson, Kansas City, Mo. (Johnson, Davis, Thomson, Van Dyke & Fairchild, Kansas City, Mo., on the brief), for appellant.

John W. Hudson, Kansas City, Mo. (Harold J. Toner, Kansas City, Mo., and John E. Honsinger, Kansas City, Mo., on the brief), for appellees J. F. Bateman, J. W. Galbrath, E. J. Davis, James H. Moore and C. H. Benbon, Statutory Trustees for Batemore, Inc., a dissolved Corporation.

Paul C. Sprinkle, Kansas City, Mo. (Sprinkle, Knowles & Carter, Kansas City, Mo., Oliver J. Miller, and Lashly, Lashly, Miller & Clifford, St. Louis, Mo., on the brief), for appellee Midwest Refrigeration, Inc.

Before GARDNER, Chief Judge, THOMAS, Circuit Judge, and DEWEY, District Judge.

1004

THOMAS, Circuit Judge.

This appeal from a judgment entered in favor of plaintiff and against defendant in fact involves two dependent cases for consideration—one ancillary to the other. They involve, first, the liability of the defendant to the plaintiff in the principal case, and, second, the liability of third party defendant to third party plaintiff in the ancillary case.

Prior to December 12, 1945, Standard Brands, Inc., a Delaware corporation, owned and occupied a store and office building situated in Kansas City, Missouri. On that day it sold the building to Batemore, Inc., an Ohio corporation, and at the same time a lease for three years from the new owner to Standard Brands, Inc., was executed.

On June 26, 1946, the building was damaged by fire. Thereafter plaintiffs J. F. Bateman, J. W. Galbrath, E. J. Davis, James H. Moore and C. H. Benbon, as statutory trustees of Batemore, Inc., then defunct, brought suit in tort in the district court against Standard Brands, Inc., to recover the damages thus sustained on the ground that the fire was the result of the tenant's negligence.

In its answer Standard Brands, Inc., denied negligence and, as third party plaintiff, filed a complaint against Midwest Refrigeration, Inc., as third party defendant, alleging that as an independent contractor employed to service the air-conditioning equipment in the building, the fire was caused by the negligence of its servant, and praying judgment against Midwest "for such sum and costs as may be found for the plaintiff herein and that any judgment rendered in favor of the plaintiff in this action be rendered against the said Midwest Refrigeration, Inc.," and that Standard Brands, Inc., be discharged. Plaintiffs did not make Midwest an additional defendant.

The case was tried to a jury. At the conclusion of the testimony defendant and third party defendant both moved for directed verdicts. The court sustained the motion of third party defendant and overruled defendant's motion. Upon submission of the case to the jury a verdict for plain-

tiff was returned against defendant for $39,875 and costs, upon which judgment was entered. Defendant then moved for judgment n. o. v., or in the alternative for a new trial which motion was overruled, and this appeal followed.

On this appeal defendant contends that the court erred in: (1) failing to sustain its motion for a directed verdict; (2) directing a verdict in favor of Midwest Refrigeration, Inc.; (3) its instructions to the jury; and (4) hiding "the identity of the real plaintiffs from the jury."

The factual situation is not in dispute.

The damaged building was equipped with a direct expansion air-conditioning system operated by electric power. The system consisted of a retainer for the refrigerant and compressors in the basement of the building with pipes leading therefrom to coils in the rooms to be cooled. Prior to July, 1943, the refrigerant freon was used in the system. At that time, due to war restrictions freon could not be obtained and a change was made from freon to methyl chloride which was used in the system in 1945 when the building was sold, and also in 1946 at the time of the fire.

Methyl chloride is a liquid refrigerant which vaporizes at a temperature of about 32 degrees. As it vaporized it cooled the coils in the rooms above the basement. The gas was then conducted to the compressors in the basement where it was compressed, forced through pipes submerged in water and cooled and converted into liquid after which it passed through pipes to the coils, was again vaporized and continued its rounds. Its movement was controlled by valves and fans during the operation of the system and was stopped and started by switches and by opening and closing valves.

The refrigerant freon operates similarly to methyl chloride. The important difference between them is that freon is comparatively harmless whereas methyl chloride is dangerous when not properly controlled because it is toxic, inflammable and subject to ignition and explosion.

One Max S. Crawford, assistant to defendant's operating manager at Kansas City, was responsible for the proper care of

the air-conditioning system and called in expert service men to make repairs when any malfunctions were reported to him by the maintenance employee, J. S. Schrader. A week or more before the fire Schrader reported that the cooling machine was not functioning properly in an office on an upper floor of the building. Crawford called third party defendant, Midwest Refrigeration, Inc., reputed to be experts in the repair and maintenance of refrigeration and air-conditioning equipment, and asked for a service man to come and make repairs. On the morning of the day of the fire Midwest sent an employee to service the system named Elmer Blosser who testified that he was "specially skilled in refrigeration." Upon his arrival at the building Crawford (called Sorenson in Blosser's testimony) told him that Schrader would show him the equipment and machinery and help him if needed. Blosser was then introduced to Schrader who showed him the location of the machinery in the basement and the rooms on the upper floors. Blosser's testimony was to the effect that he was told that Schrader would show him what he, Schrader, wanted done.

After Blosser and Schrader inspected the system, at Blosser's direction the refrigerant was "pumped down" out of the pipes and coils of the system into the receiver in the basement, after which the pipes and valves were cleaned and repaired where it was found to be necessary. Blosser then discovered a leak in the bellows of the pressure switch in the basement. He did not have the necessary part with him to repair the bellows. Since it was then 12 o'clock, lunch time, he said he would return after lunch with the necessary part and repair the bellows. Before leaving he started the motors and the system operated until his return about 2 o'clock. Blosser did not pump the refrigerant down to the receiver before repairing the bellows because he did not think it would be necessary "just to make that small change." The motors operating the compressor were stopped while the bellows was being repaired. When the repairs were completed the motors were started up and the compressor was put in operation. In the meantime

either water or the liquid refrigerant had been coming down from the pipes above into the compressor; and when the motors started, since a liquid cannot be compressed as can gas, the head of the compressor was broken and the liquid escaped into the basement room where it immediately vaporized. There was a fire in a hot water heater about 10 feet away and as soon as the vapor reached the heater an explosion occurred resulting in the fire which damaged the building.

Expert witnesses were produced by both parties from whose testimony it may fairly be said that the explosion could have been avoided (1) had the refrigerant been "pumped down" into the receiver before making the repair on the pressure switch, (2) or had the valve on the compressor been closed, (3) or had the pressure switch been blocked, (4) or had the solenoid valve been closed. The solenoid valve was the valve through which the gas passed on its return from the rooms on the upper floors to the basement. It is conceded that failure to take one or more of these essential precautions was negligence resulting in the fire. The responsibilities and liabilities of the parties for such negligence will be discussed in connection with the consideration of the alleged errors of the court upon the trial.

Defendant's first contention is that the court erred in failing to sustain its motion for a directed verdict at the close of the case on the ground that plaintiffs failed to prove defendant's negligence. At this point the contention is that the negligent act which caused the explosion of the methyl chloride gas was that of Blosser, the employee of Midwest, an independent contractor, for whose negligence Standard Brands was not responsible, in that, the replacement of the bellows on the pressure switch of the air-conditioning unit was not inherently dangerous, nor did defendant become responsible for the acts of Blosser as a loaned employee, nor by interference, and the evidence failed to show that any negligence of defendant or Schrader caused the fire.

The issue thus presented is controlled by the law of Missouri since juris-

diction is based upon diversity of citizenship. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

In considering this contention two provisions of paragraphs 2 and 3 of the lease must be kept in mind. They are, first, that the tenant shall maintain the interior of the building and be responsible for the ordinary operating expense, and, second, shall at the expiration of the term surrender the premises in as good condition as received, reasonable wear and tear and damages by the elements only excepted.

Section 3014, R.S.Mo.1939, Mo.R.S.A., provides:

"Covenant or contract of tenant to repair—effect of

"No covenant or contract to repair shall impose upon a tenant the obligation to rebuild or repair any building destroyed by fire without the procurement, connivance or *neglect of such tenant, his agents or servants,* during the continuance of the term for which such building was leased or let, unless such tenant shall specially covenant or contract to rebuild or repair, in case of the destruction or damage of such building by fire; and no action, suit or process shall be maintained or prosecuted against any tenant or other person, in whose house or apartment any fire *shall accidentally* begin or take place; nor shall any recompense be made by such person for any damage occasioned thereby, any law, custom or usage to the contrary notwithstanding." (Italics supplied.)

■ Under this statute and paragraphs 2 and 3 of the lease, supra, whether or not Midwest was an independent contractor in making the repairs in question is immaterial to the contention here under consideration. The question of whether the explosion and fire which ensued were the result primarily of the negligence of defendant's employee Schrader or of Midwest's employee Blosser is material only on the issues between Standard Brands as third party plaintiff and Midwest as third party defendant.

The action brought by plaintiffs against defendant is in tort for negligence—not an action on contract for breach of defendant's obligations under said paragraphs 2 and 3 of the lease.

■ As said by the Supreme Court of Missouri in Lahtinen v. Continental Building Co., 339 Mo. 438, 97 S.W.2d 102, 107, "The violation of a contract will not, as such, furnish a basis for liability in tort, but the act which violates the contract may be a negligent one which creates such liability. In such a case it is the negligent act rather than the violation of the contract which furnishes the basis for the liability." See, also, Norris v. Walker, 232 Mo.App. 645, 110 S.W.2d 404, 408.

■ When defendant undertook to repair the air-conditioning system its duty, without regard to the terms of the lease, was to make such repairs carefully to avoid damage to the building. It knew that a dangerous refrigerant was in use and its duty was to exercise care commensurate with the known danger. The same care applies to the use of a dangerous refrigerant as applied in the case of Washington Gas Light Co. v. Biancaniello, D.C. Cir., 183 F.2d 982, 985, wherein the court said: "A gas light company is bound to exercise such care, skill, and diligence in all its operations, and in the transaction of all its business, as the difficulty, delicacy, and danger of its business requires. Its fittings must be of the highest character, and every precaution for safety must be taken within the bounds of reason." Standard Brands, Inc., could not delegate such responsibility to an agent or to an independent contractor.

In Bloecher v. Duerbeck, 333 Mo. 359, 62 S.W.2d 553, 555, plaintiff was injured when she was present as an invitee in the rented home of her sister, Mrs. Sam Vitale, in St. Louis. The injury was caused by the explosion of a hot water heating plant in the rented building owned by defendant Duerbeck. The heater had been negligently installed by an independent contractor, and defendant pleaded that fact as a defense. The jury found for plaintiff and defendant appealed. Defendant had requested the court to instruct the jury that as a matter of law the evidence conclusively showed

that the work of installing the heating system was done by an independent contractor, which instruction the court refused, and defendant assigned such refusal as error.

In reference to this assignment of error the Supreme Court of Missouri said: "We cannot sustain defendant's contentions in this respect, but are of the opinion that defendant got more than he was entitled to in having this defense submitted to the jury. We hold that the defense of independent contractor has no application under the facts here shown. * * * While a landlord, in the absence of contract to do so, is under no obligation to his tenant to make repairs or improvements on the demised premises, yet, if he voluntarily does so * * * he must use reasonable care in doing so, and is liable for any injury caused by his negligence."

In the Bloecher case, supra, the court cited many cases and authorities to support its conclusion. It held that when the landlord covenants to keep a leased building in repair, or voluntarily undertakes to do so, he cannot delegate to another the performance of his duty so as to absolve himself from the negligent performance thereof.

The Supreme Court of Missouri has twice adhered to the rule of the Bloecher case, supra. See the same case on a second appeal in Bloecher v. Duerbeck, 338 Mo. 535, 92 S.W.2d 681, and Vitale v. Duerbeck, 332 Mo. 1184, 62 S.W.2d 559, and Vitale v. Duerbeck, 338 Mo. 556, 92 S.W. 2d 691. The Bloecher and the Vitale cases were both the result of injuries caused by the same explosion and were both before the Supreme Court of Missouri twice. No Missouri case has been called to our attention overruling or in any way modifying them. The principles controlling the decisions are declared to be of universal application. These same principles may, therefore, be applied in respect of a tenant who undertakes to make repairs upon a rented building, and the result must be the same. Compare Lowery v. Kansas City, 337 Mo. 47, 85 S.W.2d 104; Bailey v. Zlotnick, 80 U.S.App.D.C. 117, 149 F.2d 505. We have examined the cases cited by defendant, and we do not think they are in point. They hold that if an employee of an independent contractor or a third person having no interest affected by the work being done is injured by the negligence of such contractor, the employer of the contractor is not responsible in damages to such third person. That is not the case here.

■ In its reply brief defendant contends that it is not absolutely liable for failure to maintain the interior of the rented building because under paragraph 7 of the lease between the parties plaintiff landlord is required to repair fire damage. This contention was not pleaded in the answer or otherwise asserted in the trial court. No ruling thereon by the trial court is shown nor properly raised in this court. The question cannot, therefore, properly be said to be before us. Dayton-Goose Creek Ry. Co. v. United States, 263 U.S. 456, 496, 44 S.Ct. 169, 68 L.Ed. 388; Hall v. Aetna Life Ins. Co., 8 Cir., 85 F.2d 447, 452; Columbia Pictures Corporation v. Lawton-Byrne-Bruner Ins. Agency Co., 8 Cir., 73 F.2d 18, 20; American Surety Co. of New York v. Republic Casualty Co., 8 Cir., 42 F.2d 807, 810; Taylor v. Taylor, Mo., 232 S.W.2d 382, 385.

■■ The court did not err in failing to sustain defendant's motion for a directed verdict on the ground that Midwest, third party defendant, was an independent contractor. If true, that fact was not a defense under the circumstances. Neither is it a defense that the replacement of a bellows on the pressure switch of the air-conditioning system was not inherently dangerous because of the nature of the refrigerant methyl chloride. Any operation where methyl chloride is present was shown to be dangerous just as an operation involving gasoline or gunpowder is dangerous unless precautions commensurate with their nature are observed. Neither is it material on the question here presented whether the explosion was due to the negligence of Schrader or that Schrader was not a licensed engineer.

The reciprocal responsibility of defendant and Midwest will be discussed in connection with defendant's next point.

Defendant's second contention is that the court erred in directing a verdict in favor of third party defendant, Midwest Refrigeration, Inc., on its motion predicated "on the ground that under the facts and the law the third party plaintiff [Standard Brands, Inc.] has shown no right to relief against third party defendant."

In directing a verdict for Midwest the court made no comment on the motion and stated no reasons for the order. The court's review of the responsibilities of the parties was expressed, however, in the following instruction to the jury: "On the question of the responsibility here, if there was any negligence on the part of either Mr. Blosser or Mr. Schrader, in the operation and in making the repairs upon this system, then the defendant is responsible because the rule is that the principal is always liable for the errors and mistakes of the agent when the agent is engaged in the performance of a duty that belongs to the master. That is, when he is performing a service that the master puts him to or sends him to, and if he does it negligently and damage accrues to somebody, then the master is responsible for the agent's negligence. So in this case the defendant would be responsible for any neglect or negligence on the part of either Mr. Blosser or Mr. Schrader, or both of them."

This instruction was excepted to as follows: "The defendant excepts * * * to the Court's instructing the jury that the defendant, Standard Brands, is liable for the acts of Blosser as a matter of law as error because Blosser was an independent contractor, hired and employed to do a particular job, and not in the employ of the defendant, Standard Brands."

■ As shown above the instruction is correct under Missouri law so far as it goes, but no instruction was given on the issue of the responsibility of an agent to his principal for damages caused by the agent's negligence for which the principal was liable. In this regard we think the court erred. The evidence upon this issue was in conflict, and it presented a question for the jury, which should have been submitted under proper instructions.

In case Midwest or its servant Blosser is found to have been the agent of Standard Brands, and was negligent and that its negligence caused the explosion, then it is liable to defendant for the total damage which its negligence caused defendant to suffer. In State ex rel. Algiere v. Russell, 359 Mo. 800, 223 S.W.2d 481, 483, the Court quoted with approval the following from § 401 of the Restatement of the Law of Agency: "Unless he has been authorized to act in the manner in which he acts, the agent who subjects his principal to liability because of a negligent or other wrongful act is himself subject to liability to the principal for the loss which results therefrom."

■ Midwest, third party defendant, while denying negligence on its part, in effect says that considering that it was an independent contractor and that its employee Blosser was negligent, nevertheless defendant Standard Brands, Inc., is not entitled to indemnity against it because Schrader, defendant's maintenance man, was also negligent, and that defendant and Midwest were in effect *in pari delicto* or joint tort feasors. This is no doubt a correct statement of the law of Missouri. Busch & Latta Paint Co. v. Woermann Construction Co., 310 Mo. 419, 276 S.W. 614; Central Surety & Insurance Corporation v. Hinton, 233 Mo.App. 1218, 130 S.W.2d 235. However, the court did not submit the question of fact to the jury, and, as indicated supra, the evidence is in conflict upon the question of independent contractor and whether Schrader was directed to do more than assist Blosser as a helper if requested to do so. The instruction given to Blosser upon his arrival at the building by Crawford, assistant to defendant's operating manager of the building, is vital upon this point, and that is a question for the jury to determine, since Crawford's testimony and that of Blosser are in conflict. It is admitted that Midwest is engaged at Kansas City in the distinct business as experts in the repair of air-conditioning systems and that it was called by defendant to repair the system in the building in question, and that it sent Blosser who was "specially skilled in re-

frigeration" to make the repairs. Further, Blosser testified that while inspecting the plant he discovered that the "system has methyl chloride in it." Since Blosser was "specially skilled in refrigeration", it cannot be said that he was unaware of the danger of a system in which methyl chloride was used.

In 35 C.J.S., Expert, p. 213 an "expert" is defined as one " * * * particularly * * * who has peculiar knowledge or skill as to some particular subject, such as any art or science, or particular trade, or profession, * * * and is professionally or peculiarly acquainted with its practices and usages * * *."

And in Turner v. Haar, 114 Mo. 335, 21 S.W. 737, 738, the Supreme Court of Missouri say: "An expert is defined to be 'one who is skilled in any particular art, trade, or profession, being possessed of peculiar knowledge of the same. Strictly speaking, an expert in any science, art, or trade is one who, by practice or observation, has become experienced therein.' Rog.Exp.Test."

Defendant Standard Brands, Inc., next contends that the court's instructions to the jury were erroneous. Attention is first directed to the instruction quoted supra, wherein the court said that " * * * if there was any negligence on the part of either Mr. Blosser or Mr. Schrader, in the operation and in making the repair upon this system, then the defendant is responsible" because "the principal is always liable for the errors and mistakes of the agent when the agent is engaged in the performance of a duty that belongs to the master." We have already pointed out that this instruction is correct as applied to the issue between plaintiff and defendant but that it does not apply to the issue between Standard Brands, Inc., as third party plaintiff and Midwest Refrigeration, Inc., as third party defendant. The error in this connection is the failure to submit by appropriate instructions the issue of independent contractor as agent of the employer and in directing a verdict for Midwest.

The record shows that at the time of the fire on June 26, 1946, an ordinance of the City of Kansas City, Missouri, had been in effect since March 14, 1927, section 45-5 of which provided in part:

"1. Class "A" Boilers. All steam generating boilers having over 70 square feet of heating surface and carrying over 75 pounds of steam per square inch and all steam generating boilers, vessels, rendering tanks, air receivers and compression tanks having over 15 pounds pressure, where any engine is operated by such steam generating boilers, excepting engines operating ventilating fans and pumps used for vacuum or boiler feed purposes, shall be in charge of a licensed steam engineer.

\* \* \* \* \* \*

"(b) All refrigerating machines of a capacity of five tons or over shall be treated as Class A Boilers."

It is also shown that the capacity of the refrigerating machines in the building exceeded five tons and that no licensed engineer was in charge thereof. On this point the court instructed the jury as follows: "Now, in this case the testimony, as I will show you later on, indicated that no licensed engineer was in charge of this refrigerating system. Now, that being true and if there was a failure to have a licensed engineer in charge, whose duty it was to handle the system, * * * to be able to protect the public and the owner against fire, then of course there was negligence, and if the failure to have a licensed engineer was one of the causes of this accident, then that negligence was a contributing cause, contributing to the accident, and of course that would be enough to cause you to return a verdict for the plaintiffs."

Defendant excepted to this instruction on the ground that such failure " * * * was not and could not have been the proximate cause of the damage in this case."

It will be observed that the instruction is hypothetical in character, leaving to the jury the determination of the duties of a licensed engineer in charge of a refrigerating system such as the air-conditioning system in this instance; and if the failure to have an engineer qualified as the jury believed he should be was one of the causes of "this accident" then "that would be enough to cause you [the jury] to return

a verdict for the plaintiffs." The city ordinance, supra, does not define the duties of licensed engineers when in charge of such a system as the one here involved; and no evidence, expert or otherwise, shows that such an engineer should or would have done any thing that was not done by the defendant or that should have been done by such an engineer to avoid the accident. A fire caused by some external means, resulting in damage to the building, could have occurred when the engineer, licensed or not, was off duty and then he could not be held negligent for the accident. No proof is offered to support a finding that the failure to have a licensed engineer in charge was the direct or proximate cause of the accident. Had there been such proof, of course such failure would have been negligence *per se*. The instruction, although erroneous, was not prejudicial as between plaintiffs and defendant; but it was prejudicial standing alone and unmodified on the issue between third party plaintiff and third party defendant.

The evidence showed that the solenoid valve operated on a separate switch and that it functioned independently of the switch controlling the motors which operated the compressors. Therefore, when the motors were stopped unless the solenoid switch were turned off or blocked, the gas from the coils above might continue to return to the compressors and liquefy. One theory is that this is what happened, resulting in the accident. Blosser did not know that two switches controlled these two different functions of the system. The court instructed the jury that it was Schrader's duty "to say to Mr. Blosser, 'there are two switches here, independent of each other', so that he would understand if he closed one he must close the other." The record shows that at the time Schrader was in the same room about 10 feet from where Blosser was working, but that he was working on a different task.

The fundamental difficulty with the instruction is that it assumes a fact in dispute, that is, that Midwest was not an independent contractor and that Crawford's instructions to Blosser subordinated him to the directions of Schrader as to the manner in which Blosser should make the repairs. The instruction was, therefore, the equivalent of the order entered directing a verdict in favor of Midwest. Since we hold that order to be erroneous the instruction under consideration was for the same reason erroneous.

█ A further contention is that the court erroneously instructed the jury that defendant was negligent in failing to convert the refrigerant used from methyl chloride back to freon after removal of the war restrictions by the government in 1945. The lease to defendant is dated December 12, 1945, and the fire occurred June 26, 1946. However, there is no evidence to show that freon was available during that period. But this question is not involved in the issues between third party plaintiff and third party defendant and will not, therefore, arise on a new trial of those issues, so we pass it without further consideration. If the jury should find under proper instructions that Midwest was employed as an independent contractor, and as an expert, and was negligent in making the repairs, then it is liable to defendant for any damages resulting from the negligence of its expert employee Blosser to whom it assigned the duty of making the repairs.

Defendant contends that plaintiffs had no interest in the outcome of the litigation; that the insurance companies are the real parties in interest; and that the court hid from the jury the identity of these insurance companies, wherefore the court's rulings were erroneous and prejudicial. It appears that plaintiffs carried insurance against damage to the building by fire in two fire insurance companies and that these companies had paid plaintiffs the damages resulting from the fire in the amount claimed in this case. Upon the *voir dire* examination of the jury the court (1) refused to inquire of the jury whether they were interested as stockholders or otherwise in either of these companies and (2) refused to admit the policies in evidence for the purpose of showing the insurance rates had not been increased because methyl

chloride was in use as a refrigerant in the air-conditioning system.

For one not experienced in the practice and application of Missouri law it is difficult to distinguish and determine the applicable rule of the courts of that state on the first of these contentions.

In Smith v. Star Cab Co., 323 Mo. 441, 19 S.W.2d 467, 469, it is said: "The rule is settled in this state that a plaintiff is entitled to qualify the jurors as to their relations, if any, with insurance companies interested in the result of the trial. This ruling is sustained by the overwhelming weight of authority," citing 56 A.L.R. 1454 to 1499.

In Landau v. Fred Schmitt Contracting Co., 237 Mo.App. 908, 179 S.W.2d 138, 143, the court, citing numerous cases, say: "There are many cases holding that an assignment, whether by subrogation or by written instrument does not transfer the cause of action." And in the same case the court say: "It is no longer a debatable question that testimony showing that an insurance company is interested financially in the result of the trial is prejudicial."

Counsel say the Missouri courts in applying the rule distinguish between cases involving liability insurance and those involving indemnity insurance. Another distinction is based upon good faith or bad faith of counsel. We have examined the cases cited in the briefs and the cases therein cited, and we are unable to classify the cases on those principles. In this situation we defer to the opinion of the trial court who is a Missouri lawyer of long experience and who has been a justice of the Supreme Court of that state. Nolley v. Chicago, M., St. P. & P. R. Co., 8 Cir., 183 F.2d 566.

Since it was shown without dispute that the insurance rates on the damaged building had not been increased after the change from the use of freon to methyl chloride in the air-conditioning system was made in 1945, there was no prejudice in excluding the policies to make such proof.

For the foregoing reasons the judgment against defendant is affirmed, and the judgment for Midwest Refrigeration, Inc., and against defendant for costs is reversed, and the third party case is remanded with instructions to grant a new trial on the issues in that case.